**LEAR SIEGLER, INC.,** a corporation, Appellant,

v.

**John S. ADKINS,** Appellee.

**No. 18634.**

United States Court of Appeals
Ninth Circuit.

April 6, 1964.

Christie, Parker, & Hale, C. Russell Hale and Edwin L. Hartz, Pasadena, Cal., for appellant.

Beilenson, Meyer, Rosenfeld & Susman, and Peter R. Cohen, Beverly Hills, Cal., and Fulwider, Patton, Rieber, Lee & Utecht, Los Angeles, Cal., for appellee.

Before MADDEN, Judge, Court of Claims, and BROWNING and DUNIWAY, Circuit Judges.

DUNIWAY, Circuit Judge:

This action was filed in the trial court on March 1, 1963. On April 9, 1963, pursuant to a motion made by the defendant Adkins, the court entered the following order:

"IT IS ORDERED that the Motion of the Defendant to Stay all Further Proceedings herein until final adjudication in that certain action now pending between the same parties hereto in the Superior Court of the County of Los Angeles, entitled JOHN S. ADKINS, Plaintiff v. LEAR, INCORPORATED, ET AL., Defendants, being Case No. 737,267 therein, is hereby granted.

"The Court finds that this Order involves a controlling question of law as to which there is ground for difference of opinion and that an immediate appeal from this order may materially advance the ultimate termination of the litigation."

Plaintiff Lear Siegler, Inc. (Lear) appeals. Pursuant to the provisions of 28 U.S.C. § 1292(b), it applied to us for permission to appeal, and on April 25 we granted leave to appeal for the purpose of permitting argument before this court and review of the following questions:

"1. Whether an order for a stay is the type or kind of order which could or does involve a controlling question of law within the meaning of § 1292(b) of Title 28 U.S.C.?

"2. Whether, in case said question No. 1 is answered in the affirmative, the district court was in error or abused its discretion in granting the said order for stay?

"3. Whether, in case it be determined that this appeal could not properly be maintained because of a negative answer to the first question above stated, this court may nevertheless consider and treat the application presented to us as an application for writ of mandamus. Cf. Mach-Tronics, No. 18,349, (April 1, 1963) [Mach-Tronics, Inc. v. Zirpoli [9 Cir.] 316 F.2d 820]"

Lear contends that the order is appealable under both subsections (a) and (b) of 28 U.S.C. § 1292, and further contends that if we should hold that it is not, we should treat the appeal as an application for a writ of mandamus and issue a writ directing the trial court to vacate its order and proceed with the action. Appellee asserts that the order is not appealable, but concurs with Lear in urging us, if we think it is not appealable, to treat the appeal as an application for a writ of mandamus. On the merits, Lear asserts that the district court abused its discretion in granting the order, and appellee asserts that the order falls within the court's discretion, which was not abused.

In its complaint in the district court, Lear alleges that appellee owns United States Letters Patent No. 2,919,589 issued on January 5, 1960 and entitled "Gyroscope." It also asserts that since that date Lear has been manufacturing various models of gyroscopes, and that appellee asserts that in doing so Lear is infringing the patent and has demanded that Lear pay him royalties. Lear then proceeds to list some 16 reasons why it claims that the patent is invalid and to state various reasons why the gyroscopes that it manufactures do not infringe the patent if it is valid. The prayer is for a judgment decreeing that the patent is invalid and void and is not infringed by Lear, and that in demanding royalties, appellee is misusing the patent. There is a further prayer for an injunction.

Jurisdiction is not based upon diversity of citizenship, but upon the patent laws of the United States and 28 U.S.C. § 1338(a) which reads:

"The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, copyrights and trade-marks. Such jurisdiction shall be exclusive of the courts of the states in patent and copyright cases."

The remedy sought is declaratory relief and an injunction under 28 U.S.C. §§ 2201 and 2202.

Appellee's motion for stay of all further proceedings was based upon the fact that, on January 5, 1960, appellee had filed in the Superior Court of the State of California, in and for the County of Los Angeles the action referred to in the district judge's order, quoted above. A copy of the complaint and of Lear's answer in the state court action are attached to the affidavit of appellee upon which the motion was based. The complaint's allegations are as follows: On December 29, 1951 appellee and Lear entered into a written agreement in connection with appellee's employment by Lear under which all new ideas, discoveries, inventions, etc. relating to "vertical gyroscopes" were to become the property of appellee and to be licensed to Lear. On September 15, 1955 the parties entered into a detailed written agreement, a copy of which is attached to the complaint, under which Lear agreed to pay appellee certain royalties. Both during and prior to appellee's employment by Lear, appellee conceived, created and devised the inventions, ideas and discoveries referred to in the agreement and made them available to Lear. Beginning on or about September 10, 1957, Lear breached the agreement in numerous respects, including principally failure to pay royalties. Under date of April 8, 1959 Lear purported to terminate the agreement, but is nevertheless continuing to manufacture the products for which royalties are to be paid and refusing to pay the royalties. Additional damages will be incurred in the future. There is a second cause of action in which it is charged in substance that during the period of appellee's employment with Lear, Lear became familiar with his discoveries and inventions, that there was a confidential relationship between the parties and that Lear has appropriated the inventions but refused to pay for them. General damages in the sum of $100,000 are sought under the first cause of action, and in the sum of $250,000 under the second cause of action, which also asks for $250,000 exemplary damages.

The agreement of September 15, 1955 was not mentioned by Lear in the complaint filed by it in the district court. The agreement recites that appellee owns Letters Patent No. 2,542,975 relating to vertical gyroscopes and that he is also an owner of the inventions disclosed in a pending application for a United States patent on gyroscopes. Appellee's affidavit alleges that a patent, No. 2,919,589, was issued pursuant to this application on January 5, 1960. The agreement further recites that appellee is the owner of an invention relating to a "no gimbal lock feature for a gyroscope." The purpose of the agreement was to give Lear a non-exclusive license under patent No. 2,452,975 and an exclusive license under any and all applications for patents, and

patents, claiming the subject matter referred to in the agreement but for which patents had not yet issued. The agreement grants such licenses, but, as to unissued patents, is limited to such claims or inventions as are patented or patentable by appellee. In the portion of the agreement that grants the licenses there appears this statement: "Lear shall have the right on 90 days' prior written notice to Adkins, to terminate any one or more of the licenses herein granted." There is also a provision permitting Lear to terminate if the patent office refused to issue a patent on the substantial claims of the application described in the agreement. In its answer filed in the state court Lear asserts that it did terminate the agreement on April 8, 1959, pursuant to these provisions.

### 1. *The order is appealable.*

We need not pass upon appellant's contention that the order is appealable under subsection (a) (1) of § 1292 because we are of the opinion that it is appealable under subsection (b) of that section, which reads as follows:

"(b) When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order * * *."

█ We think the court's order, quoted above, is a sufficient compliance with the statute, which expressly covers inter-

locutory orders not otherwise appealable. The controlling question of law here involved is whether the district court was in error or abused its discretion in granting the stay. Our examination of the briefs and authorities leads us to the conclusion that the district judge was correct in his opinion that the question of law is one "as to which there is substantial ground for difference of opinion." Certainly it cannot be said that he was wrong in thinking that an immediate appeal may materially advance the ultimate termination of the litigation. His order stays all further proceedings until final adjudication in the pending state court action. That action has been pending since January 1960 and had not yet gone to trial at the time that the district judge made his order, although appellee said that it was to go to trial soon. While the order remains in effect there will be no further proceedings in this action. On the other hand, if the appeal were successful, the district court would be compelled to proceed with the action. Thus a reversal might materially advance the ultimate termination of the litigation, (i. e., the action in the district court). We think that the requirements of subsection (b) of § 1292 are met.

We agree with those courts that have held that the procedure authorized in subsection (b) should be used sparingly and with discrimination.[1] But we also think that to allow the appeal in this case comports with that policy. It therefore is unnecessary for us to decide whether to treat the appeal as an application for a writ of mandamus.[2]

### 2. *The district court did not err or abuse its discretion in granting a stay.*

█ We have no doubt that the district court had jurisdiction of the action before it. Lear's purpose in filing the action was to test the validity of appel-

1. Gottesman v. General Motors Corp., 2 Cir., 1959, 268 F.2d 194; In re Heddendorf, 1 Cir., 1959, 263 F.2d 887; Milbert v. Bison Labs., Inc., 3 Cir., 1958, 260 F.2d 431.

2. See: Steccone v. Morse-Starrett Prods. Co., 9 Cir., 1951, 191 F.2d 197; Shapiro v. Bonanza Hotel Co., 9 Cir., 1950, 185 F.2d 777.

lee's patent and to establish that what Lear is doing does not infringe the patent if it is valid. This is certainly a question arising "under any Act of Congress relating to patents" within the meaning of 28 U.S.C. § 1338. The fact that this is not the usual action to enforce a patent, charging infringement, does not mean that the court does not have jurisdiction. The Federal Declaratory Judgments Act (28 U.S.C. §§ 2201–2202) gives a new remedy, and there is no doubt that that remedy is applicable in patent cases. Crowell v. Baker Oil Tools, Inc., 9 Cir., 1944, 143 F.2d 1003. This, however, does not dispose of the matter.

■■ The Federal Declaratory Judgments Act does not establish a new basis for jurisdiction in the federal courts; it merely establishes a new remedy, available in cases in which jurisdiction otherwise exists. Skelly Oil Co. v. Phillips Petroleum Co., 1950, 339 U.S. 667, 671, 70 S.Ct. 876, 94 L.Ed. 1194. Moreover, the existence of jurisdiction in an action for declaratory relief does not require that the court exercise it. It has a judicial discretion to decline to grant such relief. This has been the consistent position of the Supreme Court, the latest decision being Public Affairs Associates, Inc., v. Rickover, 1960, 369 U.S. 111, 82 S.Ct. 580, 7 L.Ed.2d 604. In that case in its per curiam opinion the Court said:

> "The Declaratory Judgment Act was an authorization, not a command. It gave the federal courts competence to make a declaration of rights; it did not impose a duty to do so. Brillhart v. Excess Ins. Co., 316 U.S. 491, 494, 499 [62 S.Ct. 1173, 86 L.Ed. 1620]; Great Lakes Dredge & Dock Co. v. Huffman, 319 U.S. 293, 299–300 [63 S.Ct. 1070, 87 L. Ed. 1407]; Alabama State Federation of Labor v. McAdory, 325 U.S. 450, 462 [65 S.Ct. 1384, 89 L.Ed. 1725]; Mechling Barge Lines v. United States, 368 U.S. 324, 331, 82 S.Ct. 337, 7 L.Ed.2d 317. Of course a District Court cannot decline to entertain such an action as a matter of whim or personal disinclination.

> 'A declaratory judgment, like other forms of equitable relief, should be granted only as a matter of judicial discretion, exercised in the public interest.' Eccles v. Peoples Bank, 333 U.S. 426, 431 [68 S.Ct. 641, 644, 92 L.Ed. 784]." (369 U.S. p. 112, 82 S.Ct. p. 582, 7 L.Ed.2d 604)

Other cases to the same effect are Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co., 1952, 342 U.S. 180, 183–185, 72 S.Ct. 219, 96 L.Ed. 200; Public Serv. Comm'n of Utah v. Wycoff Co., 1952, 344 U.S. 237, 241, 243–244, 248, 73 S.Ct. 236, 97 L.Ed. 291.

Many of the Supreme Court decisions have involved the doctrine of abstention, and have refused to permit the declaratory judgment remedy to be used as a means of circumventing the normal rule that state procedures relating to public matters such as taxation, the regulation of utilities, etc., must be followed before resort is had to the federal courts. Others, however, have applied these principles in private litigation; Brillhart v. Excess Ins. Co., supra (involving state-federal conflict); Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co., supra, (involving conflict between two federal courts).

■■ Long before the enactment of the Federal Declaratory Judgments Act the Supreme Court had established two correlative rules relating to jurisdiction in patent matters. The first is that a case is within the exclusive federal jurisdiction when it seeks to enforce a patent against an infringer, even though the complaint may show, in anticipation of a defense, the existence of an agreement between the parties relating to the patent. The second is that if the suit is to enforce or to revoke a patent licensing or other similar agreement, it "is not a suit under the patent laws of the United States, and cannot be maintained in a federal court as such." (Luckett v. Delpark, Inc., 1926, 270 U.S. 496, 502, 510, 46 S.Ct. 397, 399, 70 L.Ed. 703; see also Becher v. Contoure Labs. Inc., 1929, 279 U.S. 388, 49 S.Ct. 356, 73 L.Ed. 752; Pratt v. Paris Gaslight & Coke Co.,

1897, 168 U.S. 255, 18 S.Ct. 62, 42 L.Ed. 458). It follows, and the Court has held, in Pratt and in Becher, that in an action in a state court based upon such an agreement, the state court can, where it becomes necessary for it to do so in order to decide the case before it, pass upon the meaning, the scope, the validity, or the infringement of the patent. As the Court said in Pratt: "Section 711 [3] does not deprive the state courts of the power to determine *questions* arising under the patent laws, but only of assuming jurisdiction of '*cases*' arising under those laws." (168 U.S. at 259, 18 S.Ct. at 64, 42 L.Ed. 458.) We have referred to these principles in H. J. Heinz Co. v. Owens, 9 Cir., 1951, 189 F.2d 505, n. 5. See also MacGregor v. Westinghouse Co., 1947, 329 U.S. 402, 407–408, 67 S.Ct. 421, 91 L.Ed. 380.

Until the enactment of the Federal Declaratory Judgments Act, a party charged with infringement of a patent usually could not initiate an action in a federal court, absent some other ground of federal jurisdiction. There then existed no remedy whereby he could obtain a judgment in the federal court. He could await, and then defend, the filing by the patent holder of a suit for infringement in the federal court. Or, if a contract existed between him and the patent holder, and he claimed, as Lear does here, that the patent was invalid, or that he was not using it, he might have a remedy, by way of enforcement of rescission or other relief, upon the contract in a state court.

The Federal Declaratory Judgments Act affords a new remedy, whereby one charged with infringement can initiate an action in the federal court. This creates possibilities of conflict between the federal court and a state court whenever there is a contract between the parties relating to the patent, and the patent holder has brought an action in the state court based upon the contract. It is not only in patent cases that the Federal Declaratory Judgments Act has opened up such possibilities of conflict, and it is in cases involving such possibilities of conflict that the courts have upheld the exercise by a federal court of its discretion to withhold declaratory judgment pending decision of the state court action.

The nature of the problem is well stated by Mr. Justice Jackson in Public Serv. Comm'n of Utah v. Wycoff Co., supra:

"In this case, as in many actions for declaratory judgment, the realistic position of the parties is reversed. The plaintiff is seeking to establish a defense against a cause of action which the declaratory defendant may assert in the Utah courts. Respondent here has sought to ward off possible action of the petitioners by seeking a declaratory judgment to the effect that he will have a good defense when and if that cause of action is asserted. Where the complaint in an action for declaratory judgment seeks in essence to assert a defense to an impending or threatened state court action, it is the character of the threatened action, and not of the defense, which will determine whether there is federal-question jurisdiction in the District Court. If the cause of action, which the declaratory defendant threatens to assert, does not itself involve a claim under federal law, it is doubtful if a federal court may entertain an action for a declaratory judgment establishing a defense to that claim. This is dubious even though the declaratory complaint sets forth a claim of federal right, if that right is in reality in the nature of a defense to a threatened cause of action. Federal courts will not seize litigations from state courts merely because one, normally a defendant,

3. Rev.Stat. § 711: " * * * the jurisdiction vested in the courts of the United States in the cases and proceedings hereinafter mentioned, shall be exclusive of the courts of the several States * * * Fifth. Of all cases arising under the patent-right * * * laws of the United States."

goes to federal court to begin his federal-law defense before the state court begins the case under state law. Tennessee v. Union and Planters' Bank, 152 U.S. 454 [14 S.Ct. 654, 38 L.Ed. 511]; The Fair v. Kohler Die and Specialty Co., 228 U.S. 22 [33 S.Ct. 410, 57 L.Ed. 716]; Taylor v. Anderson, 234 U.S. 74 [34 S.Ct. 724, 58 L.Ed. 1218]."

Brillhart v. Excess Ins. Co., supra, was an action in which jurisdiction was founded upon diversity of citizenship, brought by an insurance company to determine whether the company was liable to certain parties by reason of certain matters pending in a state court. The Supreme Court held that, if the question could be determined in the state litigation, the District Court had discretion to withhold declaratory relief. Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co., supra, involved the staying of a declaratory judgment action in one district court, because of the pendency of an infringement suit in another. In affirming, Mr. Justice Frankfurter said:

> "The manufacturer who is charged with infringing a patent cannot stretch the Federal Declaratory Judgments Act to give him a paramount right to choose the forum for trying out questions of infringement and validity. He is given an equal start in the race to the courthouse, not a headstart." (342 U.S. at 183 72 S.Ct. at 222, 96 L.Ed. 200)

We think that these principles are applicable here. Lear asserts that questions as to the validity or infringement of appellee's patent are within the exclusive jurisdiction of the federal courts and therefore could not be passed upon in the state litigation. As we have already shown, the law is to the contrary.

Lear also asserts that by reason of its termination of the licensing agreement between it and appellee pursuant to the terms of that agreement, appellee cannot require it to pay royalties under the terms of the agreement.[4] It further claims that, by reason of this termination, the normal rule under which it would be estopped to deny the validity of the patent does not apply.[5] It says, too, that under the terms of the agreement it agreed to accept the license only for those inventions that proved to be within the terms of appellee's patent application and actually patentable, and that the products that it makes do not fall within these terms. As we see it, the difficulty with all of these contentions of Lear is that they are precisely the issues which are pending in the state court, and that the state court will, if necessary, decide them.[6]

It seems to us quite clear that what Lear is trying to do flies in the face of the principles discussed above and applied by us in the H. J. Heinz Company case, supra. As we there said:

> "Procedurally, this is also a suit for a declaratory judgment as to the scope, validity and infringement of a patent. But in essential character and purpose it is something else.
>
> "An outstanding decree of a state court prohibits Heinz from making or using vinegar generators which are covered by the Owens patent. The present complaint admits on its face that the only controversy between the parties is that created by the action of Owens in petitioning the state court to adjudge Heinz in contempt of that decree. And, acting upon that petition before the complaint in this suit was filed, the state court had ordered Heinz to

---

4. Compare Miehle Printing Press & Mfg. Co. v. Publication Corporation, 7 Cir., 1948, 166 F.2d 615 with Seagren v. Smith, 1944, 63 Cal.App.2d 733, 147 P.2d 682. We express no opinion as to the validity of Lear's assertion.

5. Compare Bowers Manufacturing Co. v. All-Steel Equip., Inc., 9 Cir., 1960, 275

F.2d 809 with Stimpson Computing Scale Co. v. W. F. Stimpson Co., 6 Cir., 1900, 104 F. 893. Again, we express no opinion as to the validity of Lear's assertion.

6. See Rogers v. Hensley, 1961, 194 Cal. App.2d 486, 14 Cal.Rptr. 870.

show cause why it should not be adjudged in contempt. Apparently, that matter now awaits final disposition on the merits of the contempt charge.

\*    \*    \*    \*    \*

"In these circumstances, we think that both the chronology and the subject matter of the litigation in state and federal courts require the conclusion that the present suit is a device to bring within federal jurisdiction the very controversy, litigated and in litigation in the state court." (189 F.2d at 508)

In that decision we also quoted the Court of Appeals for the 7th Circuit in American Auto. Ins. Co. v. Freundt, 1939, 103 F.2d 613, 617 as follows:

"The wholesome purposes of declaratory acts would be aborted by its use as an instrument of procedural fencing either to secure delay or to choose a forum. It was not intended by the act to enable a party to obtain a change of tribunal and thus accomplish in a particular case what could not be accomplished under the removal act, and such would be the result in the instant case."

Compare Shell Oil Co. v. Frusetta, 9 Cir., 1961, 290 F.2d 689.

The authorities upon which Lear relies are not in point. They involve actions in which the district court is without discretion to decline to exercise its jurisdiction, such as actions under the antitrust laws (Lyons v. Westinghouse Elec. Corp., 2 Cir., 1955, 222 F.2d 184; Mach-Tronics Inc. v. Zirpoli, 9 Cir., 1963, 316 F.2d 820), or the Trading with the Enemy Act (Propper v. Clark, 1949, 337 U.S. 472, 69 S.Ct. 1333, 93 L.Ed. 1480).

■ We hold that in this declaratory judgment action the district court had discretion to grant the stay that it granted and did not abuse its discretion in so doing.

Affirmed.