The **BURBRIDGE FOUNDATION, INC.,**
Plaintiff,

v.

**REINHOLDT & GARDNER, Defendant,**
Velma Jean Holloway (formerly Velma Jean Burbridge) and Russell B. Holloway, Intervenors.

No. FS–73–C–65.

United States District Court,
W. D. Arkansas,
Fort Smith Division.

Sept. 14, 1973.

Charles R. Ledbetter, Shaw & Ledbetter, Fort Smith, Ark., for plaintiff.

Patrick N. Moore, of Warner, Warner, Ragon & Smith, Ft. Smith, Ark., for defendant.

G. Alan Wooten, of Harper, Young & Smith, Ft. Smith, Ark, for intervenors.

OPINION

JOHN E. MILLER, Senior District Judge.

There is before the court the motion of intervenors, Velma Jean Holloway, formerly Velma Jean Burbridge, and

Russell B. Holloway, husband and wife, filed August 23, 1973, to dismiss the complaint of plaintiff.

On June 19, 1973, plaintiff, The Burbridge Foundation, Inc., commenced this action against Reinholdt & Gardner. The plaintiff is an Oklahoma corporation with its principal place of business in a state other than Arkansas or Missouri. The defendant is a partnership or a corporation with its main office in St. Louis, Mo., and a local office in the City of Fort Smith, Ark. Jurisdiction is based upon diversity of citizenship and the amount involved, which is in excess of $10,000, exclusive of interest and cost.

The questions before the court arose in the following manner: The intervenor Velma Jean Holloway and Robert O. Burbridge were formerly husband and wife. On July 30, 1971, an Oklahoma state court of competent jurisdiction granted a full and complete divorce to Velma Jean Burbridge from Robert O. Burbridge, and in addition thereto rendered a judgment in favor of the now Mrs. Holloway for $82,000 and in favor of her then attorney, Russell B. Holloway, in the sum of $12,500 for attorney's fees.

On March 28, 1973, the intervenors filed their petition in the Chancery Court of Sebastian County, Ark., to register the judgment pursuant to the Uniform Enforcement of Foreign Judgments Act, Ark.Stat.Ann., § 29–801 et seq. (1962 Repl.). Attached to the petition to register the judgment is a certified copy of the judgment.

Upon the filing of the petition for the registration of the Oklahoma judgment and the issuance of the writ of garnishment, the Chancery Court ordered:

"That the authenticated judgment shall be registered for the purpose of permitting levy upon any property of the defendant [Robert Oscar Burbridge, aka R. O. Burbridge] in the possession and/or subject to the control of Reinholdt & Gardner, whether located in Fort Smith, Arkansas, or elsewhere, and whether in the name of the defendant, in 'Street Name', the name of 'Securities Interim', 'Interim Securities', 'Allied Antiques' or some other names or designations which are used by defendant."

At the time of the filing the Chancery Court issued a writ of garnishment garnisheeing the defendant, Reinholdt & Gardner, sub judice, as provided in Ark.Stat.Ann., § 29–806.

On April 12, 1973, the garnishee, Reinholdt & Gardner, filed its answer to the petition in which it denied that at the time of the service of the writ of garnishment that it had in its possession any assets, properties, stocks or bonds in the name of the defendant, Robert Oscar Burbridge, aka R. O. Burbridge, or in the name of "Street Name", "Interim Securities", or "Allied Antiques", or that it is indebted to the defendant in any manner. However, it alleged that at the time of the service of the writ of garnishment it did have "in its possession an account in the name of 'Securities Interim'; that said account consists of 3,074 shares of Channing Venture Fund valued at approximately $7.90 per share as of April 9, 1973; that said account has a credit balance of $13.02." That at that time it did not have in its possession an account in the name of "The Burbridge Foundation" and that said account consists of common stocks valued at approximately $43,378.00 which are held as collateral in a margin account to secure a debit balance in the approximate amount of $16,597.00. The garnishee also attached to its answer an affidavit purportedly made by R. O. Burbridge, in which the affiant stated that The Burbridge Foundation is a charitable institution, and has been classified as a charitable private foundation as defined in the appropriate sections of the Internal Revenue Code.

On April 30, 1973, the Burbridge Foundation filed its intervention in the Chancery Court pursuant to § 31–157, Ark.Stat.Ann. (1962 Repl.), in which it alleged that the securities involved here-

in are owned by it; that Robert Oscar Burbridge is an officer and trustee of said corporation and receives no advantage therefrom in the form of income or any other form of direct or indirect compensation, and that none of the assets described as being contained in the accounts now in the possession of Reinholdt & Gardner are the property of the said Robert Oscar Burbridge, and therefore none of said assets are subject to the payment of his debts. The prayer of the intervention is that the court declare that the property herein involved and heretofore described be declared to be "the sole and private property of this intervenor; for a declaration that said property is not in any way subject to the debts and/or liabilities of the defendant herein, Robert Oscar Burbridge; for an order compelling said garnishee to relinquish possession of said property in said above described accounts to this Intervenor."

In the complaint filed herein the plaintiff alleged it is the owner of certain stocks of a value of approximately $43,000 and that the stocks were deposited with the defendant, a stock broker, to the account of plaintiff; that the defendant claims a setoff debit balance against said stocks in the amount of approximately $16,000; that plaintiff has made demand upon defendant for delivery of its stocks and is entitled to their delivery and possession; that the defendant on or about March 28, 1973, was served with a writ of garnishment issued out of the Chancery Court of Sebastian County, Arkansas, in Case No. 9704, wherein Velma Jean Holloway and Russell B. Holloway were plaintiffs and R. O. Burbridge, an individual, was the defendant; that the plaintiffs in the Chancery Court action, in an attempt to satisfy a claim against R. O. Burbridge individually and arising out of a divorce action, caused said garnishment to be issued and served upon defendant.

Upon service of said writ of garnishment, the defendant refused to deliver the property to the plaintiff and the garnishment proceeding is depriving the plaintiff of its property, and was issued without a hearing or any opportunity to be heard under the law of Arkansas. That the statutory process which allows garnishment without an opportunity to be heard is void and violates the due process clause of the United States Constitution, Fifth and Fourteenth Amendments.

The prayer of the complaint is that the property be delivered to it and the garnishment depriving it of the possession of said property be held void, and the statute under which the same was issued and served declared unconstitutional, and that the defendant, Reinholdt & Gardner, be directed to deliver to the plaintiff its stock less any debits or setoffs properly due Reinholdt & Gardner.

The defendant filed its answer to the complaint on July 6, 1973, and in paragraph IV admitted that it declined and refused to deliver the stocks which are the subject of this litigation to the plaintiff; that the judgment creditor does not have a judgment against the plaintiff herein. It further alleged that "it is a stake holder in this litigation and is subject to a writ of garnishment issued by the Chancery Court of Sebastian County, Arkansas, which prevents it from making delivery of said stocks," and that the laws of Arkansas require it to hold said stocks until a court of competent jurisdiction directs it to make delivery of the same.

On August 23, 1973, this court upon motion of Velma Jean Holloway and Russell B. Holloway entered an order allowing said persons to intervene herein and to file their proposed answer and motion to dismiss this action.

In the answer the intervenors denied that the plaintiff, The Burbridge Foundation, is the owner of the stocks involved herein, and alleged that the true owner of the stocks is Robert Oscar Burbridge, aka R. O. Burbridge, an individual. They denied that the plaintiff corporation is entitled to delivery and possession of the stocks. They further alleged that the plaintiff corporation "is a

nonresident of the State of Arkansas; that it has not been domesticated nor obtained proper legal authorization to do business within the State of Arkansas and yet has conducted business within the State in violation of the law. That in accordance with Ark.Stat.Ann., § 64–1202 said corporation is not entitled to enforce contracts made in this state by it either in law or in equity."

In Paragraph IX of the answer it is alleged that the plaintiff corporation was not in fact involved in any transactions with the defendant, and that such transactions relative to the stock were in fact personal transactions of Robert Oscar Burbridge, and that the writ of garnishment issued by the Chancery Court is in accordance with the law of the State and does in fact attach to an interest of the judgment debtor, Robert Oscar Burbridge.

In the motion to dismiss the intervenors alleged that the court lacks jurisdiction of the subject matter of this action for the reason that the plaintiff is asking the court to enjoin and/or stay the order of a state court in an action pending before the state court.

In Paragraph 2 of the motion to dismiss the intervenors alleged:

"That the plaintiff has filed an intervention in the action pending in the Sebastian County Chancery Court, Fort Smith Division, requesting the same relief prayed for in its complaint in this action."

The parties have filed herein a verified copy of the Articles of Incorporation of The Burbridge Foundation, Inc.

On April 30, 1973, following the registration of the Oklahoma judgment and the issuance and service of the writ of garnishment, The Burbridge Foundation intervened in the Chancery Court and asserted in general its claim to the ownership of the securities in the hands of its brokers, Reinholdt & Gardner.

On June 19, 1973, approximately 2½ months later, plaintiff commenced its action in this court to recover from Reinholdt & Gardner certain securities which The Burbridge Foundation claimed belonged to it and which had been deposited with Reinholdt & Gardner.

The facts upon which the court must base its decision of the issues made by the pleadings in the instant case and in No. 9704 pending in the Chancery Court are not in dispute.

The ultimate and final question to be determined is whether the securities in the possession of Reinholdt & Gardner are the property of The Burbridge Foundation and not subject to the payment of the judgment in favor of the Holloways.

The plaintiff in the instant suit is not seeking to enjoin the Holloways from prosecuting the suit in the Chancery Court, but is seeking a declaratory judgment requiring the garnishee, Reinholdt & Gardner, to deliver to it the securities involved herein less any debits or setoffs properly due Reinholdt & Gardner.

Indeed, the plaintiff is not entitled to an injunction under 28 U.S.C. § 2283, which provides:

"A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

Section 15 of Article 7 of the Constitution of Arkansas provides:

"Until the General Assembly shall deem it expedient to establish courts of chancery, the circuit courts shall have jurisdiction in matters of equity, subject to appeal to the Supreme Court, in such manner as prescribed by law."

In 1903 the General Assembly established separate Courts of Chancery in every county in the State of Arkansas. Ark.Stat.Ann., § 22–401 (1962 Repl.).

Section 22–404 confers original jurisdiction on the Chancery Courts of all matters in equity, and provides appeals to the Supreme Court may be taken from the judgments and decisions of Chancery

Courts in the manner as now provided by law. See, also, Jackson v. Smith, Chancellor (1963), 236 Ark. 419, 366 S. W.2d 278.

Section 29–805 provides:

"If jurisdiction of the person of the judgment debtor cannot be obtained, a notice clearly designating the foreign judgment and reciting the fact of registration, the court in which it is registered, and the time allowed for pleading, shall be sent by the clerk of the registering court by registered mail to the last known address of the judgment debtor. Proof of such mailing shall be made by certificate of the clerk."

Section 29–806 provides:

"At any time after registration and regardless of whether jurisdiction of the person of the judgment debtor has been secured or final judgment has been obtained, a levy may be made under the registered judgment upon any property of the judgment debtor which is subject to execution or other judicial process for satisfaction of judgment."

Section 29–807 provides:

"If the judgment debtor fails to plead within twenty (20) days after jurisdiction over his person has been obtained, or if the court after hearing has refused to set the registration aside, the registered judgment shall become a final personal judgment of the court in which it is registered."

Section 29–808 provides:

"Any defense, set-off, counterclaim or cross complaint, which under the law of this state may be asserted by the defendant in an action on the foreign judgment, may be presented by appropriate pleadings and the issue raised thereby shall be tried and determined as in other civil actions. Such pleadings must be filed within twenty (20) days after personal jurisdiction is acquired over him, or within sixty (60) days after the mailing of the notice prescribed in Section 5 [§ 29–805]."

The Chancery Court has jurisdiction to determine all issues raised by the plaintiff, The Burbridge Foundation. The judgment debtor, Robert O. Burbridge, is a party to the proceedings in the Chancery Court but has not answered. He is not a party to the proceedings in this court and has filed no petition to intervene herein.

The case of Younger v. Harris (1971), 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669, was a suit by Harris, who had been indicted by a California state court charged with violation of the California Penal Code, Sections 11400 and 11401, known as California Criminal Syndication Act. He filed a complaint in the federal court, asking the court to enjoin the appellant Younger, the District Attorney, from prosecuting him on the ground that the prosecution, and even the presence of the Act inhibited him in the exercise of his rights of free speech and press, rights guaranteed by the First and Fourteenth Amendments. At page 43, 91 S.Ct. at page 750 the court said:

"Since the beginning of this country's history Congress has, subject to few exceptions, manifested a desire to permit state courts to try state cases free from interference by federal courts. In 1793 an Act unconditionally provided: '[N]or shall a writ of injunction be granted to stay proceedings in any court of a state   *   *   *.' 1 Stat. 335, c. 22, § 5. A comparison of the 1793 Act with 28 U.S.C. § 2283, its present-day successor, graphically illustrates how few and minor have been the exceptions granted from the flat, prohibitory language of the old Act. During all this lapse of years from 1793 to 1970 the statutory exceptions to the 1793 congressional enactment have been only three: (1) 'except as expressly authorized by Act of Congress'; (2) 'where necessary in aid of its jurisdiction'; and (3) 'to protect or effectuate its judgments.' In addition, a judicial exception to the longstanding policy evidenced by the statute has been made where a person

about to be prosecuted in a state court can show that he will, if the proceeding in the state court is not enjoined, suffer irreparable damages. See Ex parte Young, 209 U.S. 128 (1908)."

In the case of Dresser Industries, Inc. v. Insurance Co. of No. America (N.D. Texas 1973), 358 F.Supp. 327, the court said:

"Considerations of comity early prompted Congress to provide that federal courts should not enjoin pending state judicial proceedings except in narrowly limited situations. The word 'comity' identifies the concept that federal courts, in the exercise of their jurisdiction, should give consideration to the sovereign status of the individual state. Commonly referred to as a 'doctrine', comity is more a policy consideration than a rule of law. That policy consideration, however, underlies the rule established by the Supreme Court that federal courts should abstain to avoid needless conflict of federal jurisdiction with the administration by a state of its own affairs. See Wright, Federal Courts, § 52 (1970). A sound conception of our federal system requires a federal court to withhold intervention with state procedure in the interest of maintaining harmony within the system. State of California v. Oroville-Wyandotte Irr. Dist., 409 F.2d 532 (9th Cir. 1969)."

In 1A, Moore's Federal Practice, 2d Ed., § 0.220, p. 2603, the learned author said:

"In the exercise of discretion a federal court should normally deny a declaratory judgment where the issues raised may be fully adjudicated in a suit pending in a state court at the time the federal declaratory judgment action is instituted. And the declaratory judgment action cannot properly be used to reexamine what has been adjudged in another forum."

In State of California v. Oroville-Wyandotte Irr. Dist. (9 Cir. 1969), 409 F.2d 532, the court discussed the consideration that it must give to the questions involved in determining to entertain a suit for declaratory judgment. After citation of a great many decisions the court held that the discretion to be exercised is a judicial discretion and must have a sound basis, and at page 535 said:

"The Supreme Court in Wycoff, [Public Service Commission v. Wycoff Co.] supra, [344 U.S. 237] at 248, 73 S.Ct. 236, [97 L.Ed. 291], expressed doubt that a federal court could entertain an action for a declaratory judgment establishing a defense to a pending or threatened state court action. It is the character of the threatened action, not the defense, which determines federal-question jurisdiction. See also Lear Siegler, Inc., [v. Adkins, 9 Cir., 330 F.2d 595] supra."

In Lynch v. Snepp (4 Cir. 1973), 472 F.2d 769, the court at page 772 said:

"The long-standing public policy against federal court interference with state court proceedings antedates the Constitution. Goebel, Antecedents and Beginnings to 1801, History of the Supreme Court of the United States, 226, 299 (Freund ed. 1971). This policy is founded in part on 'the basic doctrine of equity jurisprudence that courts of equity should not act * * * when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief.' Younger v. Harris, 401 U.S. 37, 43–44, 91 S.Ct. 746, 750, [27 L.Ed.2d 669] (1971). This equity doctrine is reinforced by the concepts of federalism.

" 'We live in the jurisdiction of two sovereignties. Each has its own system of courts to interpret and enforce its laws, although in common territory. These courts could not perform their respective functions without embarrassing conflicts unless rules were adopted to avoid them.'

Wilson v. Schnettler, 365 U.S. 381, 385, 81 S.Ct. 632, 635, 5 L.Ed.2d 620 (1961).

"One such rule early adopted by the Court is that:

" 'Where a state court and a court of the United States may each take jurisdiction, the tribunal which first gets it holds it to the exclusion of the other, until its duty is fully performed and the jurisdiction invoked is exhausted; and this rules applies alike in both civil and criminal cases.'

Taylor v. Taintor, 16 Wall. 366, 370, 21 L.Ed. 287 (1873). See also Ex parte Young, 209 U.S. 123, 161–162, 28 S.Ct. 441, 52 L.Ed. 714 (1908). Thus ordinarily the jurisdiction of a state court first obtained should not be interfered with by federal courts. Ex parte Chetwood, 165 U.S. 443, 17 S.Ct. 385, 41 L.Ed. 782 (1897); University Day Care Center, Inc. v. Temple University, 442 F.2d 1116, 1118 (3d Cir. 1971); Ganger v. Peyton, 379 F.2d 709 (4th Cir. 1967)."

In H. J. Heinz Co. v. Owens (9 Cir. 1951), 189 F.2d 505, the court at page 507 said:

"Many years ago this court construed that section as prohibiting interference with proceedings for the enforcement of a judgment of a state court. Mills v. Provident Life & Trust Co., 9 Cir., 1900, 100 F. 344. More recently, the Supreme Court has adhered to the same doctrine saying that 'proceedings in a State court' within the meaning of Section 2283 include 'any proceedings supplemental or ancillary taken with a view to making the suit or judgment effective'. Hill v. Martin, 1935, 296 U.S. 393, 403, 56 S.Ct. 278, 283, 80 L.Ed. 293."

The case of American Automobile Ins. Co. v. Freundt (7 Cir. 1939), 103 F.2d 613, is often cited with approval on the question involved herein. The court cited Borchard, Declaratory Judgments, p. 109, in which it is stated:

" * * * the court will refuse a declaration where another court has jurisdiction of the issue, where a proceeding involving identical issues is already pending in another tribunal, where a special statutory remedy has been provided, or where another remedy will be more effective or appropriate under the circumstances."

The court cited and relied upon the case of Aetna Cas. & Surety Co. v. Quarles (4 Cir. 1937), 92 F.2d 321, and 103 F.2d at page 619 said:

"In Aetna Casualty & Surety Co. v. Quarles, supra, the wife of an insured brought suit in a state court against him for damages on account of injuries received while riding with insured in his automobile. Pending the suit the insurer sought a declaration in a federal district court that it was not bound to defend the action or pay any judgment that might be obtained. Pending the declaration suit the damage action proceeded to judgment. The judgment creditor then brought an independent action against the insurer, such a suit being authorized by the terms of the policy. The plaintiff in the suit for damages filed a motion in the federal court to dismiss the declaratory action. The district court sustained the motion on the ground, among others, that the controversy was one that could more properly be adjudicated in the judgment creditor's action. Upon appeal to the Circuit Court of Appeals, the District Court's dismissal was upheld on the ground that the District Court had a measure of discretion in the matter of granting declaratory relief."

In Yellow Cab Co. v. City of Chicago (7 Cir. 1951), 186 F.2d 946, the court at page 950, in discussing the judicial discretion to be exercised, held that jurisdiction is not to be declined merely because of the existence of another adequate legal remedy, citing Rule 57, Fed. R.Civ.P., and stated:

"It is well settled, however, that a declaratory judgment may be refused where it would serve no useful pur-

pose, Chicago Furniture Forwarding Co. v. Bowles, 7 Cir., 161 F.2d 411, 412; Piedmont Fire Ins. Co. v. Aaron, 4 Cir., 138 F.2d 732, 734, or would not finally determine the rights of the parties, Aetna Casualty & Surety Co. v. Quarles, 4 Cir., 92 F.2d 321, 324, or where it is being sought merely to determine issues which are involved in a case already pending and can be properly disposed of therein, American Automobile Ins. Co. v. Freundt, 7 Cir., 103 F. 2d 613, 619, especially if the issue is one involving a novel question of state law, Standard Acc. Ins. Co. v. Leslie, D.C., 55 F.Supp. 134, 137, or is, for any other reason, one that can better be adjudicated in another court, Borchard on Declaratory Judgments, pp. 109–110. Nor should declaratory relief be granted where it would result in piecemeal trials of the various controversies presented or in the trial of a particular issue without resolving the entire controversy, Aetna Casualty & Surety Co. v. Quarles, 4 Cir., 92 F. 2d 321, 325, American Automobile Ins. Co. v. Freundt, 7 Cir., 103 F.2d 613, 619."

The plaintiff in the instant case raised no constitutional question in its intervention that was filed in the Chancery Court. It only contended there that the assets in the possession of the garnishee were owned by it and that, therefore, none of the assets in the hands of garnishee are subject to the debts of the judgment debtor.

In the complaint filed herein it is alleged that the plaintiff is entitled to have the property delivered to it and prays that the statute under which the writ of garnishment was issued be declared unconstitutional.

On page 3 of its memorandum in support of its contentions the plaintiff stated:

"No attempt is made by The Burbridge Foundation, Inc., to prevent the judgment creditor from proceeding to execute on its judgment debtor or to register its judgment under the Arkansas Act. Likewise, no order is prayed enjoining the State Court from enforcing the foreign judgment against the individual judgment debtor. No relief is sought in this action against any party other than Reinholdt & Gardner and the relief specifically sought is the return and delivery to The Burbridge Foundation of its stock deposited with that defendant."

The question of the constitutionality of the issuance and service of the writ of garnishment was raised by the plaintiff for the first time in its complaint. On page 6 of its memorandum, it cites the case of Fuentes v. Shevin (1972), 407 U.S. 67, 98 S.Ct. 1983, 32 L.Ed.2d 556. One of the attorneys for the plaintiff later telephoned the Judge of this court and asked him to consider three decisions, to-wit: Meredith v. City of Winter Haven (1943), 320 U.S. 228, 64 S.Ct. 7, 88 L.Ed. 9; Zwickler v. Koota (1967), 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed. 2d 444; Miller v. Miller (10 Cir. 1970), 423 F.2d 145.

The court has considered the contention of the plaintiff as to the validity of the issuance and service of the writ of garnishment, and is convinced that it was validly issued and served. The stocks or securities are still in the hands of Reinholdt & Gardner, and only a lien is impressed upon that property, and under the obligation of the defendant as a broker it cannot surrender securities or property in its possession where there is a disputed ownership until a court of competent jurisdiction authorizes delivery. Reinholdt & Gardner by their answer is simply asking the court to determine whether the stocks and securities are owned by The Burbridge Foundation or whether in truth and in fact are owned by Robert O. Burbridge, who does not deny the validity of the judgment but seeks to avoid the levy on his broker by claiming he has received no income from The Burbridge Foundation and that the corporation is not liable to his judgment creditors by reason of its ownership of the stock.

The cases relied upon by counsel for plaintiff are clearly distinguishable from the question in the instant case. On page four of its memorandum, the plaintiff argues and refers to the contentions of the Holloways as being a "type of straw man argument." It cites the case of Werbe v. Holt (W.D.Ark. 1951), 98 F.Supp. 614. The reliance of plaintiff on that decision is misplaced. See Holt v. Werbe (8 Cir. 1952), 198 F.2d 910, where the court reversed and dismissed the case along with another kindred case, at page 915, quoting from United States v. Bank of New York & Trust Co., 296 U.S. 463, 477, 56 S.Ct. 343, 347, 80 L.Ed. 331, said:

> "The rule is settled that the court, State or Federal, which first acquires jurisdiction in a proceeding in rem or quasi in rem retains jurisdiction to the exclusion of the other until final adjudication. 'The principle, applicable to both federal and state courts, that the court first assuming jurisdiction over property may maintain and exercise that jurisdiction to the exclusion of the other, is not restricted to cases where property has been actually seized under judicial process before a second suit is instituted. It applies as well where suits are brought to marshal assets, administer trusts, or liquidate estates, and in suits of a similar nature, where, to give effect to its jurisdiction, the court must control the property.'" (Citations omitted.)

The court is convinced that the intervenors, Velma Jean Holloway and Russell B. Holloway, are entitled to a trial on their claims in the Chancery Court of Sebastian County, Arkansas. That court is competent to determine all of the issues raised by the parties in the instant case, and the motion of said intervenors should be sustained.

Judgment is being entered today sustaining said motion to dismissing the complaint of the plaintiff, The Burbridge Foundation.